UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Burton Helleloid and
Rebecca Helleloid,

Plaintiffs,

vs. ORDER

Independent School District
Number 361,

Defendant, Civ. No. 00-521 (RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 19th day of June, 2001.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, made in accordance with the provisions of Title 28 U.S.C. §636(c), upon the Defendant's Motion to Dismiss.

A Hearing on the Motion was conducted on March 22, 2001, at which time, the Plaintiffs appeared by Teri E. Bentson, Esq., and the Defendant Independent School District Number 361 ("the District") appeared by Bradley J. Lindeman, Esq.

For reasons which follow, the Defendant's Motion is granted, in part. In addition, we direct the Plaintiffs, pursuant to Rule

FILED JUN 19 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

(27)

12(e), Federal Rules of Civil Procedure, to file a more definite statement of Counts II and III of their Complaint.

II. Factual and Procedural Background

This action arises from the sexual abuse that was suffered by the Plaintiffs' son, Justin M. McGee ("McGee"), while he was a student at Falls Elementary School in the School District, which is located in International Falls, Minnesota. In 1985, while a second grader at Falls Elementary School, McGee was designated a student with emotional or behavioral problems ("EBD"), and was assigned a special education teacher, John Alan Pearson ("Pearson"). Shortly thereafter, Pearson began to sexually abuse McGee.

According to the Plaintiffs' Complaint, in 1986, McGee told his mother, Rebecca Helleloid ("Helleloid"), that Pearson was "touching his bottom." See, Complaint, at ¶ 10. The Plaintiffs allege that, thereafter, Helleloid reported McGee's accusation to Pearson who, in turn, reported the complaint to the special education director, Michael Erickson ("Erickson"). However, no one from the District reported this alleged incident of abuse to the authorities, or undertook any remedial measures to investigate the alleged abuse, or to prevent further abuse. According to the Plaintiffs, the District informed them that the matter had been fully investigated by both a State Agency, and by the District itself, and that this investigation had resulted in a determination that

McGee's complaint occurred as a result of misunderstood casual contact. Id. at ¶ 14.

For the next four to five years, McGee continued to suffer from sexual abuse at the hands of Pearson. Despite the fact that McGee reported this abuse, Erickson and Ruth Teeter ("Teeter"), who was the school psychologist, failed to investigate these allegations, or to inform the Plaintiffs of McGee's complaints. Further, although McGee's complaints were recorded in his school EBD file, which Erickson reviewed prior to consultative sessions with the Plaintiffs, the Plaintiffs maintain that Erickson deliberately withheld this information. Id. at ¶ 18.

In 1992, Pearson pled guilty to criminal sexual conduct, in the second degree, for his abuse of McGee. Thereafter, McGee sued the District, and Pearson, for damages under theories of respondeat superior, negligent retention, assault and battery, and the intentional infliction of emotional distress. See, McGee v. Independent School Dist. No. 361, 1998 WL 114077 (Minn. App. 1998). Fourteen months after that Complaint was filed, the District moved for Summary Judgment, while McGee moved for a continuance to conduct additional discovery on whether Pearson's acts were foreseeable. The Trial Court granted Summary Judgment in the District's favor and, thereafter on appeal, the Minnesota Court of Appeals reversed the Trial Court's grant of Summary Judgment, and remanded the case back

to the Trial Court. Id. Following a Jury Trial, McGee was awarded a favorable Verdict and, subsequently, the parties settled the dispute during the period for post-Trial Motions.

On March 7, 2000, McGee's parents filed this suit, which seeks damages under Title 42 U.S.C. §1983, attorneys fees under Title 42 U.S.C. §1988, and damages for fraud and intentional misrepresentation. In support of their Section 1983 claim, the Plaintiffs have alleged that the District had a custom and policy of not reporting allegations of abuse, and that, in furtherance of this policy, the District: (1) failed and refused to report repeated allegations of abuse, as required by State law; (2) failed and refused to investigate memoranda in McGee's school EBD file, which suggested that McGee was suffering from sexual abuse; (3) failed to inform the Plaintiffs of their son's complaints of sexual abuse; (4) withheld documents from their records which revealed sexual abuse; (5) deceived the Plaintiffs about the nature and extent of the District's alleged investigation into the complaints of abuse; and (6) engaged in a pattern of deceiving the Plaintiffs about the nature and extent of its investigations into the alleged abuse, in order to conceal its failure to act. See, Complaint, at ¶ 25.

The Plaintiffs also allege that the District intentionally deceived the Plaintiffs, by falsely professing that it had fully investigated and reported any allegations of sexual abuse that had

been voiced by McGee, when, in fact, no investigation had been conducted. Id. at ¶ 21. According to the Plaintiffs, the District continued to make these false representations, in sworn pleadings and briefs, which were filed with the Koochiching County District Court in 1997 and 1998, and in a sworn brief which was filed with the Minnesota Court of Appeals, in 1997. Id.

As argued by the Plaintiffs, the actions, or inaction, of the District, deprived them of information and knowledge necessary for them to make informed decisions as parents, and thereby hindered their ability to protect McGee from harm, and to otherwise "parent" McGee. Id. at ¶ 26. As such, the Plaintiffs contend that they were denied their fundamental constitutional right to parent without State interference. Id. at ¶ 27. In addition, by continuing to falsely represent that it had investigated McGee's allegations of abuse, the Plaintiffs contend that the District committed fraud.

In response to the Plaintiffs' Complaint, the District filed its Motion to Dismiss. According to the District, the Plaintiffs' claims should be dismissed because they are barred by the applicable statute of limitations. As well, the District contends that the Plaintiffs cannot sustain a Section 1983 claim, because they cannot demonstrate that State action was directed at harming their parental relationship with McGee, nor can they demonstrate that they suffered a permanent, physical, loss of association with Mc-

Gee. Finally, the District argues that the Plaintiffs' fraud claims should be dismissed because they have not pled those claims with particularity, as required by Rule 9, Federal Rules of Civil Procedure.

III. Discussion

A. Standard of Review. In considering a Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, we accept as true, in a hypothetical sense, all of the factual allegations of the Complaint, and we view those allegations in a light most favorable to the nonmoving party -- here the Plaintiffs. See, Riley v. St. Louis County of Missouri, 153 F.3d 627, 630 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1998); Anderson v. Franklin County, Mo., 192 F.3d 1125, 1131 (8th Cir. 1999); Springdale Educ. Ass'n v. Springdale School Dist., 133 F.3d 649, 651 (8th Cir. 1998). Under such an analysis, a Motion to Dismiss, for failing to state a claim, should only be granted if it is beyond doubt that no relief could be granted, under any set of facts, when the allegations are construed in a light most favorable to the pleader. Hartford Fire Ins. Co. v. California, 509 U.S. 764, 811 (1993); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Conley v. Gibson, 355 U.S. 41, 45-46 (1957); County of St. Charles v. Missouri Family Health Council, 107 F.3d 682, 684 (8th Cir. 1997), cert. denied, 522 U.S. 859 (1997).

In deferring to the well-pleaded factual allegations, the Court need not accept, as true, wholly conclusory allegations, or unwarranted factual inferences. See, Hanten v. School Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999); Springdale Educ. Ass'n v. Springdale School Dist., supra at 651; Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3rd Cir. 1997); LRL Properties v. Portage Metro Housing Authority, 55 F.3d 1097, 1103 (6th Cir. 1995). Moreover, in treating the factual allegations of a Complaint as true, the Court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts." Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990), citing Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).

B. Legal Analysis. The District seeks a dismissal of the Plaintiffs' Section 1983 claim, and their fraud claims. Since these issues involve different considerations, we address them separately.

1. The Plaintiffs' Section 1983 Claim. In moving to dismiss the Plaintiffs' Section 1983 claim, the District urges that the claim is time-barred, and that, as pled, the claim fails to state a viable cause of action. Again, we discuss these subsidiary issues separately.

a. Is the Plaintiff's Section 1983 Claim Time-Barred.

According to the District, because Pearson pled guilty to criminal sexual conduct in 1992, at a minimum, the Plaintiffs were aware of the abuse McGee suffered for a period of over nine years before their Complaint was filed and, therefore, their Section 1983 claims are barred by the applicable statute of limitations.

Although there is no specific statute of limitations expressly contained in Section 1983, our Court of Appeals has held that, in Minnesota, the six-year statute of limitations, which is found in Minnesota Statutes Section 541.05, applies to Section 1983 claims. See, Egerdahl v. Hibbing Community College, 72 F.3d 615, 618 n. 3 (8th Cir. 1995), citing Berg v. Groschen, 437 N.W.2d 75, 77 (Minn. App. 1989)("In Minnesota, §1983 claims are governed by the six-year limitations period of Minnesota's personal-injury statute * * *."); see also, Woodson v. International Broth. of Elec. Workers Local 292, 974 F. Supp. 1256, 1262 (D. Minn. 1997); Lake v. Honeywell, Inc., 1997 WL 458463 at *5 (D. Minn. 1997). As such, had the statute of limitations began to run in 1992, as the District contends, the Plaintiffs' claims would be barred, as their Complaint was not filed until March 7, 2000.

In response, the Plaintiffs argue that the District is not entitled to a dismissal of their Section 1983 claims, on time-bar grounds, as they are not claiming that they suffered damage as a result of Pearson's abuse but, rather, they are alleging that they were damaged when the District committed fraud, by falsely representing that it had properly investigated McGee's claims of abuse, and when the District purposefully withheld information, from McGee's student records, which would have revealed that the abuse was taking place. The Plaintiffs maintain that, because the District continued to make false representations, up until 1998, concerning the extent of its investigation, in one State Court filing or another, the statute of limitations should be tolled, until 1998.

Under Minnesota law, the six-year statute of limitations period, which is applicable to fraud-based claims, begins to run upon the discovery, by the aggrieved party, of the facts constituting the basis for that cause of action. See, Klehr v. A.O. Smith Corp., 87 F.3d 231, 235 (8th Cir. 1996), aff'd, 521 U.S. 179 (1997), citing Minnesota Statutes Section 541.05, Subdivision 1(6); see also, Tuttle v. Lorillard Tobacco Co., 118 F. Supp.2d 954, 962 (D. Minn. 2000)(where relief is sought on the basis of fraud, accrual of the statute of limitations is tolled until the plaintiff discovers the fraud). However, as our Court of Appeals has explained:

> The Minnesota Supreme Court has construed this statute as imposing a standard of objective reasonableness upon a plaintiff to discover the facts constituting the fraud. Bustad v. Bustad, 116 N.W.2d 552, 555 (Minn. 1962). "[T]he facts constituting the fraud are deemed to have been discovered when, with reasonable diligence, they could and ought to have been discovered." Blegen v. Monarch Life Ins. Co., 365 N.W.2d 356, 357 (Minn.App. 1985)(quotations omitted). "A plaintiff must exercise reasonable diligence when he or she has notice of a possible cause of action for fraud." Buller v. A.O. Smith Harvestore Prods., Inc., 518 N.W.2d 537, 542 (Minn. 1994). A "'party need not know the details of the evidence establishing a cause of action, only that the cause of action exists'" in order for the limitations period to commence. Id., quoting Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 919 (Minn. 1990). A failure to actually discover the fraud will not toll the limitations period if such a failure is inconsistent with this reasonable diligence standard. Blegen, 365 N.W.2d at 357.

Klehr v. A.O. Smith Corp., supra at 235.

Here, the Plaintiffs bear the burden of demonstrating that, with reasonable diligence, they could not have discovered the facts that constitute the basis for their Section 1983 claim, prior to March 7, 1994, which is six years prior to the date on which this action was filed. Id., citing Blegen v. Monarch Life Ins. Co., 365 N.W.2d 356, 357 (Minn.App. 1985).

In this respect, the Plaintiffs claim that they were unable to discover such facts until 1998, when Erickson testified that, contrary to the District's previous representations, he never con-

ducted an investigation into McGee's allegations of abuse. As noted by the Plaintiffs, prior to Erickson's admission, the District continued to maintain that it had conducted an adequate investigation into McGee's claims of abuse. The Plaintiffs further argue that, prior to the commencement of McGee's State Court action, in 1996, they were unaware of any evidence which suggested that the District had been intentionally withholding information that was contained in McGee's school files.

If, as the Plaintiffs here allege, the basis for a cause of action is fraudulently concealed by the offending party, the statute of limitations is tolled, until the aggrieved party discovers, or has a reasonable opportunity to discover, the concealed facts. Id. at 237, citing Buller v. A.O. Smith Harvestore Prods., Inc., 518 N.W.2d 537, 542 (Minn. 1994); see also, Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 918 (Minn. 1990). The limitations period is tolled, however, "only if it is the very existence of the facts which establish the cause of action which are fraudulently concealed." Hydra-Mac, Inc. v. Onan Corp., supra at 918-19. "Merely establishing that a defendant had intentionally concealed the alleged [facts] is insufficient; the claimant must establish that it was actually unaware that the [facts] existed before a finding of fraudulent concealment can be sustained." Id. at 919. Moreover, "'there must be something of an affirmative nature de-

signed to prevent, and which does prevent, discovery of the cause of action' for fraudulent concealment to apply." Klehr v. A.O. Smith Corp., supra at 237, quoting Wild v. Rarig, 234 N.W.2d 775, 795 (1975), cert. denied, 424 U.S. 902 (1976).

Of course, "[i]n the presence of a fiduciary or confidential relationship, a false denial of knowledge or information by one who is in possession of the facts may result in liability, if its effect is to lead the potential plaintiff to believe 'that the facts do not exist or cannot be discovered.'" Goellner v. Butler, 836 F.2d 426, 431 (8th Cir. 1988), quoting DeCosse v. Armstrong Cork Co., 319 N.W.2d 45, 51 (Minn. 1982). In the absence of a fiduciary or confidential relationship, "the essence of fraudulent concealment, then, is that the defendant has engaged in some behavior that has had the purpose and effect of concealing the presence of a cause of action from the plaintiff." Appletree Square 1 Limited Partnership v. W.R. Grace & Co., 815 F. Supp. 1266, 1275 (D. Minn. 1993), aff'd, 29 F.3d 1283 (8th Cir. 1994), citing Henry v. Raynor Mfg. Co., 753 F. Supp. 278, 282-83 (D. Minn. 1990). "In no case, however, is mere silence or failure to disclose sufficient in itself to constitute fraudulent concealment." Id., quoting Wild v. Rarig, supra at 431.

Accordingly, "[t]he foregoing standard creates a two-fold inquiry." Id. First, the Court must determine if there is a genuine

issue of material fact as to whether the District fraudulently concealed the extent of its investigation into McGee's claims of abuse. Id. If fraudulent concealment of the facts did occur, then we must consider if a fact issue exists as to whether the District's fraudulent concealment had the effect of preventing the Plaintiffs from discovering the cause of their action. Id. As the proponents of the doctrine of fraudulent concealment, the Plaintiffs "bear the burden of showing that [the District] concealed the fraud and that the concealment itself could not have been discovered sooner by exercising reasonable diligence." Klehr v. A.O. Smith Corp., supra at 237; see also, DeCosse v. Armstrong Cork Co., supra at 51. Lastly, we are mindful "that 'normally in a statute of limitations context fraudulent concealment and a plaintiff's due diligence are questions of fact unsuited for summary judgment.'" Veldhuizen v. A.O. Smith Corp., 839 F. Supp. 669, 674 (D. Minn. 1993), quoting Hines v. A.O. Smith Harvestore Prods., Inc., 880 F.2d 995, 999 (8th Cir. 1989). Nevertheless, "[w]here the evidence leaves no room for a reasonable difference of opinion * * * the court may properly resolve fact issues as a matter of law." Id. at 675, citing Miles v. A.O. Smith Harvestore Prods., Inc., 992 F.2d 813, 817 (8th Cir. 1993).

Here, the Plaintiffs have failed to demonstrate that the District's purportedly fraudulent misrepresentations, regarding the

extent of its investigation, could not have been discovered prior to March of 1994, through the exercise of reasonable diligence and, therefore, we conclude that the Plaintiffs' Section 1983 claim should be dismissed as barred by the applicable six-year statute of limitations. Taking the evidence in a light most favorable to the Plaintiffs, we assume, as the Plaintiffs allege, that the District fraudulently represented, to the Plaintiffs, that it had adequately investigated McGee's claims of sexual abuse, through 1998. We further assume, for these purposes, that a fiduciary, or confidential relationship existed, between the Plaintiffs, and the District. Notwithstanding these assumptions, the Plaintiffs were aware, as early as 1986, that McGee had leveled claims of abuse against Erickson. See, Complaint, at ¶ 10. The suspicions aroused by McGee's initial complaint were confirmed six years later, in 1992, when Pearson pled guilty to felony sexual contact with McGee. Despite the stark confirmation of Pearson's abuse of McGee, the Plaintiffs undertook no inquiry, at that time, to determine what the District had done in ferreting out the potential that Pearson had continued to engage in the type of conduct that McGee reported some six years previously.

In our considered view, this level of distraction, preoccupation, or inattention,[1] is wholly inconsistent with the "Minnesota Supreme Court's teaching that the requirement of reasonable diligence imposes an affirmative duty to investigate upon a party who is aware of facts that might constitute a possible cause of action for fraud." Klehr v. A.O. Smith Corp., supra at 237, citing Buller v. A.O. Smith Harvestore Prods., Inc., supra at 542; Hydra-Mac, Inc. v. Onan Corp., supra at 919 ("A party need not know the details of the evidence establishing the cause of action, only that the cause of action exists."). After Pearson's guilty plea, and being forewarned of the very conduct which prompted that plea, we think it to be objectively unreasonable that the Plaintiffs did not then make inquiry -- in view of Pearson's admission that the abuse was continuous -- as to why the District had supposedly not been aware that such a continued course of abuse had been inflicted upon one of its students -- their son. Yet, the Record fails to disclose **any** effort, by the Plaintiffs, to conduct such an inquiry,

[1]We do not suggest that the Plaintiffs were not devoted parents, or were otherwise negligent in their parental duties. It is frequently the case that parental responsibilities, other than commencing a lawsuit, captivate the attentions of a parent. We have no reason to believe that the failure of the Plaintiffs, to timely commence this lawsuit, was attributable to any other cause than their preoccupation with the other demands of parenting their son.

notwithstanding McGee's pursuit of his somewhat factually analogous claim in the Minnesota State Courts.

Notably, the Plaintiffs expressly disavow any claim that they seek damages, as the parents of McGee, for the abuse McGee suffered. Rather, they seek damages, in their capacity as parents, for the asserted loss of their parental relationship with their son. Nothing more was needed, by 1992, to advance that claim than what the Plaintiffs already knew at that time -- namely, that McGee had previously informed them of Pearson's abuse, that the District had assertedly investigated the complaint and found the conduct to be misperceived, and yet, notwithstanding the District's disavowal, Pearson admitted to engaging in the prohibited conduct for a six-year period of time. We understand the Plaintiffs to urge that, because they trusted the District, they were assuaged into disbelieving that the District had knowledge of Pearson's criminal offenses. Nevertheless, we do not here apply a subjective standard -- solely governed by the Plaintiffs' personal feelings -- ours is an objective standard, and we cannot reasonably conceive of a parent who, in 1992, given the information that the Plaintiffs then possessed, would not have understood the potential that the District had diminished their parental rights to such an extent as could potentially give rise to a Section 1983 claim.

Nonetheless, the Plaintiffs waited a further eight years before filing their claim in this Court, and that delay is, in our considered opinion, fatal to their Section 1983 action. Simply stated, the "discovery rule," and the "doctrine of fraudulent concealment," are not intended to protect those who are not vigilant in advancing their legal claims, when they have sufficient knowledge of the facts so as to alert the reasonable person to act upon those facts. As a consequence, the Plaintiff's Section 1983 claim is inexcusably untimely, and the District's Motion to Dismiss that claim is granted on that ground. Nonetheless, in the interests of completeness, we proceed to the District's Motion to Dismiss the Plaintiff's claims on its merits.

b. The Fundamental Right to Parent Analysis.

Both the Supreme Court, and our Court of Appeals, have "recognized a liberty interest which parents and children have in each other's companionship." Harpole v. Arkansas Dep't of Human Servs., 820 F.2d 923, 927 (8th Cir. 1987), citing Lehr v. Robinson, 463 U.S. 248, 258 (1983); Myers v. Morris, 810 F.2d 1437, 1462-63 (8th Cir. 1987)("[p]arents have a recognized liberty interest in the care, custody, and management of their children."). As such, in certain cases, parents have standing to sue for the deprivation of their own liberty interest, in the creation and mainte-

nance of the parent-child relationship. See, Mattis v. Schnarr, 502 F.2d 588, 593-95 (8th Cir. 1974).

Generally, these types of cases fall into two categories. First, the Supreme Court has held "as a matter of substantive due process that the government may not interfere in certain particularly private family decisions * * * [including] the decisions whether to procreate, * * * whether to school one's children in religious as well as secular matters, * * * and defining the 'family' with whom one chooses to live." Ortiz v. Burgos, 807 F.2d 6, 8 (1st Cir. 1986), citing Griswold v. Connecticut, 381 U.S. 479 (1965)(procreation); Pierce v. Society of Sisters, 268 U.S. 510 (1925)(schooling preferences); Moore v. City of East Cleveland, 431 U.S. 494 (1977)(living arrangements). Further, in a second category, are cases in which the Supreme Court has held that, "when the state seeks to change or affect the relationship of parent and child in furtherance of a legitimate state interest, such as in cases involving termination of parental rights, * * * determining paternity, * * * and deciding whether an unwed father may retain custody of his children after their mother's death, * * * a fourteenth amendment liberty interest is implicated and the state therefore must adhere to rigorous procedural safeguards." Id., citing Santosky v. Kramer, 455 U.S. 745, 753 (1982)(parental

rights); Little v. Streater, 452 U.S. 1 (1981)(paternity); Stanley v. Illinois, 405 U.S. 645 (1972)(custody determinations).

Here, the Plaintiffs have premised their Section 1983 claim on the District's alleged interference with their ability to raise their son.[2] Specifically, the Plaintiffs contend that: (1) the District fraudulently represented to them that it had fully investigated McGee's claims of abuse; (2) the District failed to report those claims of abuse to the Plaintiffs, or to the authorities; (3) the District repeatedly and intentionally failed to report suspected abuse, as reflected in McGee's EBD file to authorities, and as required by State law; and, (4) the District repeatedly, and intentionally, failed to report suspected abuse reflected in McGee's EBD file to the Plaintiffs, and intentionally withheld such

[2] "The Civil Rights Act of 1871 provides every citizen with a right of action, at law or in equity, against any 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States].'" Steele v. City of Bemidji, 114 F. Supp.2d 838, 846 (D. Minn. 2000), citing Title 42 U.S.C. §1983. "In order to prevail on a Section 1983 claim, a plaintiff must establish that the actions complained of were committed by persons acting under color of State law, and that those actions deprived the plaintiff of a right, privilege, or immunity, which was secured by the Constitution, or by the laws of the United States." Id., citing Title 42 U.S.C. §1983; Hamilton v. Schriro, 74 F.3d 1545, 1549 (8th Cir. 1996), cert. denied, 519 U.S. 874 (1996); Thomas v. Gunter, 32 F.3d 1258, 1259 (8th Cir. 1994).

information from them, during biannual meetings. See, Complaint, at ¶¶ 11-15, 18, 25, 26, 30, 35. According to the Plaintiffs, these direct acts of fraud violated their Fourteenth Amendment rights, by rendering them unable to protect McGee from harm -- thereby interfering with, and irreversibly harming, their parent-child relationship. In contrast, the District contends that, even if proven true, these allegations do not successfully state a claim under Section 1983, because the District's actions are not alleged to have been directed at the parent-child relationship which existed between the Plaintiffs and McGee.[3]

---

[3]The District also contends that the Plaintiffs' Section 1983 claim should be dismissed because they have failed to demonstrate the existence of a continuing, widespread, persistent, pattern of unconstitutional conduct, as well as deliberate indifference to, or tacit authorization of, the conduct. Id. at 7, citing Morlock for West Central Education Dist., 1999 WL 176929, *25 (D. Minn. 1999).

In order to establish a Section 1983-based claim against a school district, a Plaintiff must show:

> That the School District had an official policy or widespread custom that violated the law and caused his injury. See, Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. (1997); Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998); Kinman v. Omaha Pub. Sch. Dist., 94 F.3d 463, 467 (8th Cir. 1996). The requirement of an official policy ensures that a school district is liable only for those acts which "'may fairly be said to be those of the [district].'"

(continued...)

In Harpole v. Arkansas Dep't of Human Servs., supra, our Court of Appeals considered whether a grandmother could maintain a civil rights action for the death of her grandson. The child's death was the result of neglect, on the part of his mother, who had taken custody of the child after a State hospital discharged the child into her care, notwithstanding evidence of abuse and neglect. In considering whether the grandmother could maintain a cause of

---

[3](...continued)

> Springdale Educ., 133 F.3d at 651 (quoting Brown, 117 S.Ct. at 1388). An alleged illegal custom must be widespread and may only subject a school district to liability if it is pervasive enough to have the "force of law." Id.

Artis v. Francis Howell North Band Booster Ass'n, Inc., 161 F.3d 1178, 1181-1182 (8th Cir. 1998).

Here, we need not decide whether the District's argument is valid, because this is a Motion to Dismiss, and we may not examine whether the Plaintiff has "demonstrated" that the District had a unofficial policy or custom. This type of analysis would be appropriate in the context of a Motion for Summary Judgment but, unless the facts were stipulated, not in a Motion to Dismiss.

In order for the Plaintiffs' Section 1983 claim to survive, their Complaint need only allege that the District authorized an official policy or custom that caused them to suffer a constitutional harm or deprivation. Here, the Plaintiffs' Complaint alleges that the District "had a formal or informal custom and policy that allegations or evidence of abuse were not reported as required by state law." Complaint, at ¶ 24. The Complaint further alleges that, as a result of this policy, the District intentionally engaged in a variety of actions which deprived the Plaintiffs of their constitutional right to parent without State interference. Id. at ¶¶ 25-27. As such, it appears that the Plaintiffs' have succeeded in alleging the existence of a pattern of unconstitutional conduct, as well as official authorization of that conduct.

action, under Section 1983, based upon the State's alleged interference with the plaintiff's relationship with her grandson, our Court of Appeals addressed whether, in order to maintain such an action, a showing of State action, which was directly aimed at the parent-child relationship, and an accompanying injury, that was not merely incidental to the offending conduct, was required.

Specifically, the Court's analysis included a favorable discussion of the First Circuit's decision, in Ortiz v. Burgos, 807 F.2d 6 (1st Cir. 1986), where the Court dismissed a Section 1983 action, for loss of companionship, which had been brought by the mother, stepfather, and siblings, of an adult inmate who had been beaten to death by prison guards.[4] In analyzing Ortiz, our Court

---

[4]In Ortiz v. Burgos, 807 F.2d 6 (1st Cir. 1986), the Court upheld the dismissal of the Section 1983 claim, reasoning as follows:

> Admittedly, it seems logical to argue that the parent-child relationship was at least as irreversibly affected here as in a severance of parental relationship proceeding, and that harm to that relationship deserves either recognition in a section 1983 cause of action or, at a minimum, a searching inquiry of the adequacy of state relief. But we think it significant that the Supreme Court has protected the parent only when the government directly acts to sever or otherwise affect his or her legal relationship with a child. The Court has never held that governmental action that affects the parental relationship only incidentally -- as in this case -- is susceptible to challenge for a violation of due pro-

(continued...)

of Appeals addressed the critical issue, which pends before us, as follows:

> The First Circuit, in Ortiz v. Burgos, 807 F.2d 6 (1st Cir. 1986), divided constitutionally protected interests in familial relationships into two categories. In the first category are cases protecting the right to make private decisions affecting the family, such as whether to bear children. "The emphasis in these cases on choice suggests that the right is one of preemption; rather than an absolute right to a certain family relationship, family members have the right, when confronted with the state's attempt to make choices for them, to choose for themselves." Id. at 8. The second category contains cases dealing with governmental attempts to directly affect the parent-child relationship by means such as determining paternity or terminating parental rights. Id.
>
> Based on this analysis of the protection given familial relationships, the court in Ortiz

[4](...continued)
cess.

* * *

> We decline, on this record, to make the leap ourselves from the realm of governmental action directly aimed at the relationship between a parent and a young child to an incidental deprivation of the relationship between appellants and their adult relative. Accord, Ealey v. Detroit, 375 N.W.2d 435 (1985), cert. denied, 479 U.S. 931 (1986)(rejecting parental right where adult child is not living with or supporting parents); White v. Talboys, 573 F. Supp. 49 (D. Colo. 1983); Jackson v. Marsh, 551 F. Supp. 1091 (D. Colo. 1982).

Ortiz v. Burgos, supra at 8-9.

> found that a stepfather, three brothers, and one sister did not have a protected liberty interest in the companionship of their adult son and brother who was allegedly beaten to death by prison guards. The court found a significant difference between government actions which directly affect the relationship between a parent and a minor child and actions which indirectly affect the relationship between parent and adult child. The court also stressed the fact that a stepfather, rather than a natural father was bringing suit. Finally, the court noted that recognizing a protected liberty interest in that situation "would constitutionalize adjudication in a myriad of situations we think inappropriate for due process scrutiny, including the alleged wrongful prosecution and incarceration of a child or the alleged wrongful discharge of a child from a state job, forcing the child to seek employment in another part of the country." Id. at 9.
>
> We do not believe that the drafters of the Fourteenth Amendment intended to protect from government interference every conceivable family relationship, no matter how far removed. Further, it is illogical to believe that federal law requires that money be paid to a grandmother whose grandchild is injured by the state. Protecting familial relationships does not necessarily entail compensating relatives who suffer a loss as a result of wrongful state conduct, especially when the loss is an indirect result of that conduct.

Harpole v. Arkansas Dept. of Human Services, supra at 927-928.

In our considered view, the Court's analysis, in Harpole, inclusive of its favorable discussion of Ortiz, reflects that the Eighth Circuit has joined with the Fourth, First, and Sixth Circuits, in requiring a parent, who seeks to maintain a Section 1983 claim,

which is based upon the loss of association with a child, to demonstrate that the State action was aimed directly at the parent-child relationship. See, Pittsley v. Warish, 927 F.2d 3, 8 (1st Cir. 1991); Shaw v. Stroud, 13 F.3d 791, 794 (4th Cir. 1994); Jaco v. Bloechle, 739 F.2d 239 (6th Cir. 1984); but see, Kelson v. City of Springfield, 767 F.2d 651, 656 (9th Cir. 1985)(holding that parents possessed a constitutionally protected liberty interest in the companionship of their child where they filed a Section 1983 claim arising out of the suicide of their son, while he was at school).[5] Given this alignment, the Court's decision, in Baynard v. Lawson, 76 F. Supp.2d 688 (E.D. Va. 1999) -- in which the Court employed a similar evidentiary showing -- seems particularly apt.

In Baynard, a molested student's parents brought suit against a school superintendent, under Section 1983, for failing to warn them that their child's teacher was accused of sexually molesting a former student, and was suspected of inappropriate conduct with their own child. Despite several complaints involving the molesting teacher -- including several incidents involving the teacher and the plaintiffs' son -- the school made no investigation, and

[5]We note that there is also a third grouping of Courts, which refuse "to recognize a substantive due process claim arising from the deprivation of the love and support of a family member." See, Baynard v. Lawson, 76 F. Supp.2d 688, 692 (E.D. Va. 1999), citing Shaw v. Stroud, 13 F.3d 791, 804 (4th Cir. 1994); Willard v. City of Myrtle Beach, 728 F. Supp. 397 (D.S.C. 1989).

failed to inform the plaintiffs of any risk to their son. After the teacher was convicted of several felony counts of sexual misconduct, the plaintiffs brought suit alleging that they had suffered a constitutional deprivation of the parent-child relationship because of the school's failure to warn them that their son was at risk. Specifically, the plaintiffs alleged that the school violated their constitutionally protected parental right to raise their child in an environment free from sexual abuse. Id. at 690. In addition, the plaintiffs argued, as do the Plaintiffs here, that their parental relationship with their son was effectively destroyed as a result of the abuse he sustained, and the actions and/or inaction of the school, and its superintendent. Id. at 691.

In dismissing the parents' claim, the Court, in Baynard, noted that a split exists in the Circuits as to whether the protections of substantive due process extend to claims predicated on governmental actions which only incidentally affect the family relationship. Id. at 693. However, in the Fourth Circuit, Courts require the plaintiffs to demonstrate that the claimed State action has directly injured the parent-child relationship itself. Id., citing Shaw v. Stroud, supra at 804, citing, in turn, Ortiz v. Burgos, supra 7-9. As such, the Court, in Baynard, went on to analyze the propriety of the plaintiffs' claim, in that case, as follows:

[I]n the present case, the question is whether the harm that Plaintiffs allege -- deprivation of their parental rights -- amounts to a direct injury, which is cognizable, or an *incidental* injury, which is not cognizable.

The Fourth Circuit has not defined what constitutes direct injury. However, the First Circuit has provided some guidance. Direct injury is that which is directly aimed at the parent-child relationship. See, Pittsley v. Warish, 927 F.2d 3, 8 (1st Cir. 1991)(holding that a mother and her two children failed to establish a §1983 claim where there was no evidence that threats made to the mother were directly aimed at the relationship between parent and child). The aggrieved person under §1983 is the target of state action which deprives the victim of their personal rights under the color of state law. See, id. at 9; Ortiz, 807 F.2d at 8. Only the person toward whom the state action was directed may maintain a §1983 action. See, Pittsley, 927 F.2d at 9.

Incidental injury is that injury where the offending conduct is directed toward the children themselves and not the parent-child relationship. See, Divergilio v. Skiba, 919 F. Supp. 265 (E.D. Mich. 1996).

* * *

In this case, Plaintiffs allege that Defendant Superintendent deprived them of their constitutional right as parents to protect their son from harm caused by the state's action. The Complaint identifies Defendant Superintendent's acts and omissions as the state action. Plaintiffs make several assertions which must be accepted as true: Plaintiffs allege that Defendant Superintendent knew that a teacher, Mr. Lawson, was accused of sexual abuse in the past and that Mr. Lawson continued to teach their child in a public school under Defendant

Superintendent's direction. They allege that Defendant Superintendent was well aware of the unreasonable risk of harm an accused child molesting teacher posed to students, and yet, he decided not to inform Plaintiffs of the risk to their child -- even though that teacher was spending excessive time with their son. Furthermore, Plaintiffs submit that Defendant Superintendent directed Mr. Lawson to refrain from contact with children after school hours, but then, failed to monitor Mr. Lawson's behavior. **However, these allegations do not allege any direct physical injury to their person inflicted as a result of Defendant Superintendent's actions. Nor do Plaintiffs allege that Defendant Superintendent attempted to legally sever or legally affect the parent-child relationship.**

* * *

[T]he characterization of the injury as direct or incidental is determined by identifying the target of the offending conduct by the state actor. Surely, the parents have been injured in fact here, yet under the law, the Court must find that Defendant Superintendent's actions and those of Mr. Lawson were directed at the child, and not the parents. **Plaintiffs do not allege any conduct which was intentionally nor directly aimed at depriving them of or diminishing their relationship with their son. Plaintiffs have not alleged that they suffered a permanent, physical loss of association.** While Defendant's failure to notify Plaintiffs of the allegations enabled the abuse of Plaintiffs' son to continue, any constitutional violation was committed against the son. Thus, while Plaintiffs' injury is not insignificant, their alleged injury was incidental to the injury suffered by their son.

Baynard v. Lawson, supra at 693-695 [italics in original, bold emphasis added].[6]

Given the similarities between Baynard, and the circumstances here, a dismissal of the Plaintiffs' Section 1983 claim is required, on the merits of the Plaintiffs' claim, over and above the dismissal we have previously addressed on timeliness grounds. As did the Court in Harpole, the Baynard decision relies substantially upon the reasoning of Ortiz, and we conclude that these decisions properly guide our analysis of the Plaintiffs' Section 1983 claim.

We are mindful of the Plaintiffs' argument that, unlike the circumstances in Baynard, here, the Plaintiffs allege that the District **intentionally** interfered with their right to parent by direct and intentional acts of fraud, such as professing that matters had been investigated, and removing evidence of abuse from their son's school records. Accordingly, the Plaintiffs urge that Baynard is

---

[6]Another discussion of incidental injury to the parent-child relationship is contained in Divergilio v. Skiba, 919 F. Supp. 265 (E.D. Mich. 1996). In Divergilio, two parents brought a Section 1983 claim against a gym teacher who had, allegedly, exposed himself to his elementary school students, including their children. Id. at 266. The parents alleged that the parent-child relationship had been damaged by the emotional and mental distress that resulted from this incident. In rejecting the parents' claim, the Court noted that the parents failed to prove that the governmental action was directed toward depriving them of their familial relationship with their children, and was not merely incidental. Id. at 269. The Court also held that, because there was no severance of the parent-child relationship, and because there was no permanent, physical loss of association, the parents' claim could not be maintained. Id.

distinguishable because that case involved omissions, as opposed to the direct acts of fraud that are alleged against the Defendant here. We do not suggest that Baynard is indistinguishable from the Plaintiffs' claims, we merely observe that the differences are without a meaningful distinction. In Baynard, the Court was confronted, as we are here, with allegations of a "cover-up," and we seriously doubt that any substance is added to the constitutional dimensions of the asserted "cover-up," by the fact that, in Baynard, the complained-of conduct was solely in the nature of non-disclosure, for the impact is the same, as the parents are denied an opportunity of notice, and response. Notably, as in Baynard, the Plaintiffs have not alleged that they suffered any direct physical injury to their person, as a result of the District's actions, nor do they allege that the District acted with an intent to legally sever their parent-child relationship with their son.

Although the Plaintiffs have attempted to characterize their injury as the direct result of the District's actions, it is plain that the target of the offending conduct was McGee, and there is not the slightest intimation, in this Record, that the District was intending to harm the Plaintiffs in any way. Undoubtedly, the Plaintiffs have suffered from the District's conduct which, for these purposes, we assume to be reprehensible, but it was McGee who needlessly sustained years of sexual abuse, and the emotional and

physical torment that goes with it, as a result of the District's behavior, and McGee prosecuted, to a settlement, his claim against the District. While, to be sure, the Plaintiffs suffered significantly from the District's conduct, their injury was, nonetheless, incidental to the harm suffered by McGee. Were the Plaintiffs' Section 1983 claim viable, then every Section 1983 claim, which involved a minor, or a spouse, would have an attendant claim by the parents, or spouse, in the nature of a loss of consortium, or a denial of a parental relationship. Section 1983 does not go so far as to envelope such derivative claims. See, Harbury v. Deutch, 233 F.3d 596, 606-607 (D.C. Cir. 2000)(rejecting a Section 1983 consortium claim; Berry v. City of Muskogee, 900 F.2d 1489, 1506-07 (10th Cir. 1990); Stallworth v. City of Cleveland, 893 F.2d 830, 838 (6th Cir. 1990); Ballas v. City of Reading, 2001 WL 73737 at *7 (E.D. Pa., January 25, 2001); Pritzker v. City of Hudson, 26 F. Supp.2d 433, 443 (N.D.N.Y. 1998); Wiers v. Barnes, 925 F. Supp. 1079, 1095-96 (D. Del. 1996); Niehus v. Liberio, 1989 WL 26831 at *2-3 (N.D. Ill., March 22, 1989); but see, Robinson v. Johnson, 975 F. Supp. 950, 954-55 (S.D. Tex. 1996).

Therefore, finding that the Plaintiffs' Section 1983 claim is not viable, as a matter of law, we grant the District's Motion to Dismiss that claim.[7]

---

[7]At the Hearing, the Plaintiffs requested leave to amend their Complaint to include an allegation that they suffered a permanent, physical loss of association with McGee, as a result of the District's conduct. As noted by the Plaintiffs, because McGee was confined in a mental institution for five years, while recovering from the mental distress that resulted from Pearson's abuse, they were unable to maintain a parent-child relationship, during that time. Where, as here, plaintiffs seek to amend their Complaint, Rule 15(a), Federal Rules of Civil Procedure, dictates that leave to amend shall be "freely given when justice so requires." DeRoche v. All American Bottling Corp., 38 F. Supp.2d 1102, 1105-06 (D. Minn. 1998). Although we begin with a presumption of liberality, the right to amend is not absolute, see, Floyd v. State of Missouri Dept. of Social Services, Div. of Family Services, 188 F.3d 932, 939 (8th Cir. 1999), as an amendment to a pleading can be successfully challenged on the grounds of futility if the claims created by the amendment would not withstand a Motion to Dismiss for the failure to state a claim upon which relief can be granted. See, Becker v. Univ. of Nebraska at Omaha, 191 F.3d 904, 908 (8th Cir. 1999); Humphreys v. Roche Biomedical Laboratories, Inc., 990 F.2d 1078, 1082 (8th Cir. 1993); Weimer v. Amen, 870 F.2d 1400, 1407 (8th Cir. 1989); Holloway v. Dobbs, 715 F.2d 390, 392-93 (8th Cir. 1983); but cf., Karl's Inc. v. Sunrise Computers, Inc., 901 F.2d 657, 660 (8th Cir. 1990)("colorable showing" sufficient to withstand application of clearly frivolous rule).

By their proposed amendment, the Plaintiffs are attempting to satisfy the requirements of Ortiz, Harpole, and Baynard, by alleging that they suffered a physical loss of association with McGee. However, as noted in Baynard, in order for this type of Section 1983 claim to survive, the plaintiff-parents must allege that they suffered a permanent loss of association. See, Baynard v. Lawson, 76 F. Supp.2d 688, 694 (E.D. Va. 1999); see also, Pittsley v. Warish, 927 F.2d 3, 8 (1st Cir. 1991); Bell v. Milwaukee, 746 F.2d 1205, 1244-45 (7th Cir. 1984); Trujillo v. Board of County Comm'rs, 768 F.2d 1186, 1188-89 (10th Cir. 1985). Here, such an allegation would be futile, as the Plaintiffs concede that McGee is alive, and (continued...)

2. The Plaintiffs' Fraud Claims. In Counts II and III of their Complaint, the Plaintiffs allege that the District's behavior constitutes fraud and intentional misrepresentation, for which they seek damages.[8] According to the District, these claims should be dismissed, because they have not been pled with particu-

---

[7](...continued) is capable of interacting with his parents. Although the Plaintiffs' relationship with McGee has been damaged and, perhaps, irretrievably so, the Plaintiffs cite to no authority, nor have we uncovered any, which holds that a parent may maintain a Section 1983 action based on a loss of association with their child, when the child remains alive. Without such guidance, we decline to boundlessly extend the law solely to accomplish that result.

[8]According to the District, these claims are also barred by the six year statute of limitations that applies to fraud claims in Minnesota. See, Minnesota Statutes Section 541.05, subdivision 1(6).; see also, Klehr v. A.O. Smith Corp., 87 F.3d 231, 235 (8th Cir. 1996), aff'd, 521 U.S. 179 (1997). The Plaintiffs' fraud claims are based upon their allegations that the District falsely represented that it had investigated McGee's claims of abuse and, also, that the District failed to report suspected abuse, as required by State law. However, because the Plaintiffs' allegations of fraud are not particularized, as required by Rule 9(b), Federal Rules of Civil Procedure, we do not have an adequate factual basis upon which to judge the timeliness of the Plaintiffs' fraud and misrepresentation actions. While the Plaintiffs contend that the District's fraudulent behavior was ongoing until 1998, when Erickson finally admitted that no investigations had taken place, and that evidence of abuse had been intentionally withheld from the Plaintiffs, they have failed to identify the time, place, and source of the fraudulent representations, that were assertedly made by the District. As such, we cannot determine whether the Plaintiffs' fraud claims are barred by the applicable statute of limitations. Moreover, as presently framed in deficient allegations, we are unable to conclude, as the District asserts, that the factual fraud and misrepresentation claims are coterminous with the Plaintiffs' Section 1983 claim.

larity, as is required by Rule 9, Federal Rules of Civil Procedure.

Rule 9(b), Federal Rules of Civil Procedure, requires that, when pleading a claim of fraud, "the circumstances constituting fraud * * * shall be stated with particularity." As a result, the circumstances constituting fraud "must be concrete and sufficiently particularized to give Defendants notice of 'what conduct is complained of and to prepare a defense to such claim of misconduct.'" First Presbyterian Church of Mankato v. John Kinnard & Co., 881 F. Supp. 441, 445 (D. Minn. 1995), quoting Goldman v. Belden, 98 F.R.D. 733, 735 (W.D.N.Y. 1983). "Particularity," as the term is employed in Rule 9(b), "means the who, what, when, where, and how: the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990), cert. denied, 498 U.S. 941 (1990); see also, Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1069 (8th Cir. 1995), quoting Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir. 1982), cert. denied, 464 U.S. 1008 (1983)(In order to satisfy Rule 9(b), in the assertion of a claim that involves an asserted misrepresentation of fact, a plaintiff must specify "'the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'").

Here, the Plaintiffs have failed to adequately state the circumstances surrounding their allegations of fraud, with the parti-

cularity required by Rule 9(b). As averred by the Plaintiffs' Complaint:

> [The] Defendant engaged in a pattern and practice of fraud and deceit intended to prevent Plaintiffs from further inquiry into alleged abuse by Pearson; Defendant also engaged in a pattern and practice of fraud and deceit to prevent Plaintiffs from learning that it had failed and refused to investigate allegation [sic] and other evidence of abuse. This pattern included, but was not limited to, Defendant telling Plaintiffs that it had reported the allegation of abuse and that the matter was fully investigated; attesting to the Minnesota district and appellate courts that the allegation was reported and fully investigated through October 26, 1998; telling Plaintiffs that Pearson was an appropriate, skilled instructor for Justin, yet, simultaneously withholding vital records from IEP meetings that revealed sexual contact between Pearson and Justin; and affirmatively representing that Defendant was acting in Justin's best interests, while ignoring additional complaints of abuse and failing and refusing to inform Plaintiffs of their son's complaints.

Complaint, at ¶ 30.

Even a cursory review of these allegations, as augmented by those incorporated by reference, demonstrate that they fall short of the level of specificity that is mandated by Rule 9(b). While the Complaint alludes to various false representations that were made over the years to the Plaintiffs, it fails to specify "the time, place and contents of [the] false representations, as well as the identity of the person making the misrepresentation * * *." Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., supra at 1069.

For example, although the Plaintiffs' Complaint alleges that the "Defendant [told the] Plaintiffs that it had reported the allegation of abuse and that the matter was fully investigated," it does not specify which of the District's agents made the representation, or how the representation was communicated, nor does it specify the time and place of the representation. These same deficiencies permeate many of the Plaintiffs' specific allegations of fraud. Consequently, these allegations, when taken as a whole, do not suffice "to give [the Defendant] notice of 'what conduct is complained of and to prepare a defense to such claim of misconduct.'" First Presbyterian Church of Mankato v. John Kinnard & Co., supra at 881.

Because Counts II and III of the Complaint do not state viable claims for fraud, or intentional misrepresentation, as they are currently pled, the Defendants' Motion to Dismiss is well-taken. Nevertheless, because we cannot say that there are no set of facts, if properly pled, and proven at Trial, which would entitle the Plaintiffs to the relief they seek, the District's Motion to Dismiss is denied, and the Plaintiffs are directed, pursuant to Rule 12(e), Federal Rules of Civil Procedure, to plead a more definite statement of Counts II and III, **within 20 days of the date of this Order**, or the claim will be dismissed. Cf., In re Burlington Coat Securities Litigation, supra at 1435 (where RICO based fraud claim

is dismissed on Rule 9(b) grounds, leave to amend should be granted).

NOW, THEREFORE, It is --

ORDERED:

1. That **within twenty days of the date of this Order**, the Plaintiffs shall serve and file an Amended Complaint setting forth allegations in support of Counts II and III that fully comply with the pleading requisites of Rule 9(b), Federal Rules of Civil Procedure, or we will direct that Counts II and III be dismissed.

2. That the Defendant's Motion to Dismiss [Docket No. 17] is GRANTED in part, as outlined in the text of this Order.

3. That the Defendant's unopposed Motions to Amend Scheduling Order [Docket No. 22], and to Reopen Discovery [Docket No. 23] are GRANTED, and the parties are directed to "meet and confer," and to then advise the Court of the time needed to complete the pretrial aspects of this case, in the form of a Rule 26(f) Report, and the Court will conduct a Pretrial Conference to address the issuance of an amended Scheduling Order upon receipt of the parties' advices.

BY THE COURT:

Raymond L. Erickson

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE